No. 21-2298

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MICHAEL RINALDI,

*Appellant,*

v.

UNITED STATES OF AMERICA, (*case caption continued on inside cover*)

*Appellee.*

ON APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
No. 1:13-cv-00450, U.S. District Judge Sylvia H. Rambo

### BRIEF OF APPELLANT
### WITH ATTACHED JOINT APPENDIX VOLUME 1

Timothy S. Judge, Esq.
U.S. ATTORNEY'S OFFICE
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
(570) 348-2800

Carlo D. Marchioli, Esq.
U.S. ATTORNEY'S OFFICE
Middle District of Pennsylvania
Sylvia H. Rambo U.S. Courthouse
1501 N 6th St., 2nd Flr, PO Box 202
Harrisburg, PA 17102
(717) 221-4482

Weili J. Shaw, Esq.
U.S. DEPARTMENT OF JUSTICE
Civil Division, Appellate Staff
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-1371

*Attorneys for Appellee*

Tadhg Dooley, Esq.
David Roth, Esq.
**Pro bono counsel**
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400

Aroosa Cheema, Law Student*
Ayesha Durrani, Law Student*
Brian Liu, Law Student*
YALE LAW SCHOOL ADVANCED
APPELLATE LITIGATION PROJECT
127 Wall Street
New Haven, CT 06511
(914) 316-2302
*See footnote on inside cover

*Attorneys for Appellant*

HARRELL WATTS, (Central Office);
J. L. NORWOOD, (Regional Director); B. A. BLEDSLOE, (Warden);
J. E. THOMAS, (Warden); J. GRONDOLSKY, (Acting Warden);
MR. YOUNG, (Associate Warden); MRS. REAR, (Associate Warden);
JOHN DOE (captain); TAGGART, (Deputy Captain); DR. MINK, (Psychology);
MR. KISSELL, (case manager); D. BAYSORE, (counselor);
MR. GEE, (officer); MR. BINGAMAN, (officer); MR. PACKARD, (Officer);
MRS. SHIVERY, (officer); B TAUNER, (officer);
OFFICER N. BEAVER; LIEUTENANT R RAUP

---

*This brief has been prepared by the Advanced Appellate Litigation Project, operated by Yale Law School. The brief does not purport to present the school's institutional views, if any. Motions for admission of law students Aroosa Cheema, Ayesha Durrani, and Brian Liu are prepared and will be filed with the Court as soon as possible.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE CASE..............................................................5

  I.  Factual Background............................................................................5

    A.  Defendants Baysore, Kissell, and Gee transferred Mr. Rinaldi to a cell with a known violent inmate in retaliation for protected grievance activities.............6

    B.  Defendants Beaver and Raup house Mr. Rinaldi and Pink together, despite Pink's threats to harm Mr. Rinaldi. ................................................................8

  II. Procedural Background .....................................................................11

    A.  *Rinaldi I*: The District Court incorrectly dismisses Mr. Rinaldi's Complaint on exhaustion grounds. ...........................................................11

    B.  *Rinaldi II*: The District Court incorrectly grants summary judgment on Rinaldi's remaining claims.................................................................13

    C.  Proceedings on Appeal.................................................................17

SUMMARY OF THE ARGUMENT....................................................18

ARGUMENT ..........................................................................................21

  I.  The District Court erred in granting summary judgment despite the presence  of genuine issues of fact that could be resolved in Mr. Rinaldi's favor....................21

    A.  There is a genuine dispute of fact concerning Defendants' deliberate indifference to the known risk that Mr. Rinaldi would be assaulted. ............22

      1.  There is a genuine dispute about Defendants' awareness of, and deliberate indifference to, a credible threat of bodily harm to Mr. Rinaldi. ................23

        a.  A reasonable jury could find that Defendants were aware of the threat    to Mr. Rinaldi. .........................................................................24

        b.  A reasonable jury could find that Defendants knew the threat was serious. ....................................................................................27

c.  A reasonable jury could find that Defendants were deliberately indifferent to this known, serious threat. ..................................28

2.  There is a genuine issue regarding the extent of injuries Mr. Rinaldi suffered as a result of the defendants' deliberate indifference. .....................30

B.  The District Court improperly ignored these factual disputes due to its overly restrictive application of Local Rule 56.1. ..........................................33

C.  The District Court erred in granting summary judgment when it was clear additional discovery was needed. ...................................................36

II. Mr. Rinaldi's claims are cognizable under *Bivens*. ..............................................38

A.  Mr. Rinaldi does not call upon the Court to "extend" *Bivens* into a "new context." ................................................................................................41

1.  This Court has already held that *Bivens* extends to Eighth Amendment failure-to-protect claims involving inmate-on-inmate violence. .................41

B.  The Supreme Court's recent decision in *Egbert* does not undermine the longstanding recognition that *Bivens* extends to failure-to-protect claims. ....44

C.  The Court need not reconsider the "special factors" Defendants identify. ....47

III. In light of *Xi v. Haugen*, the FTCA provides an alternative basis recognizing Mr. Rinaldi's claims. ........................................................................................48

A.  Mr. Rinaldi stated a viable FTCA claim. .......................................................49

B.  The decisions dismissing Mr. Rinaldi's FTCA claim under the discretionary-function exception have been abrogated by this Court's decision in *Haugen*. 53

C.  Mr. Rinaldi's FTCA claims should be revived on remand. .............................55

CONCLUSION .................................................................................................................56

CERTIFICATION OF BAR MEMBERSHIP .......................................................................58

CERTIFICATE OF COMPLIANCE .....................................................................................59

CERTIFICATE OF SERVICE ...............................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. Seba,*
  658 F. App'x 83 (3d Cir. 2016) ...........................................................35

*Anchorage Assocs. v. V.I. Bd. of Tax Review,*
  922 F.2d 168 (3d Cir. 1990) ...........................................................22, 33

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...........................................................21

*Bistrian v. Levi,*
  696 F.3d 352 (3d Cir. 2012) ...........................................................*passim*

*Burlington N. R. Co. v. Hyundai Merchant Marine Co.,*
  63 F.3d 1227 (3d Cir. 1995) ...........................................................55

*Carlson v. Green,*
  446 U.S. 14 (1980) ...........................................................39, 43, 46

*Correctional Services Corp. v. Malesko,*
  534 U.S. 61 (2001) ...........................................................39

*Davidson v. O'Lone,*
  752 F.2d 817 (3d Cir. 1984) ...........................................................51

*Davis v. Passman,*
  442 U.S. 228 (1979) ...........................................................39, 46

*Doe v. Abington Friends School,*
  480 F.3d 252 (3d Cir. 2007) ...........................................................36

*Egbert v. Boule,*
  596 U.S. 482 (2022) ...........................................................*passim*

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ...................................................................*passim*

*Griffin v. Crippen*,
    193 F.3d 89 (2d Cir. 1999) .................................................32

*Hart v. City of Philadelphia*,
    779 F. App'x 121 (3d Cir. 2019) ...................................37, 38

*Hossic v. United States*,
    682 F. Supp. 23 (M.D. Pa. 1987) .........................................50

*Hull v. Freeman*,
    991 F.2d 86 (3d Cir. 1993) .................................................55

*Linder v. United States*,
    937 F.3d 1087 (7th Cir. 2019) ...........................................54

*Lunney v. Brureton*,
    2007 WL 1544629 (S.D.N.Y. May 29, 2007) .....................32

*Macias v. United States*,
    2006 WL 1843111 (D.N.J. June 30, 2006) ....................51, 52

*Mala v. Crown Bay Marina, Inc.*,
    704 F.3d 239 (3d Cir. 2013) ...............................................34

*Martinez v. United States*,
    2015 WL 1471446 (M.D. Pa. Mar. 31, 2015) ....................49

*McClendon v. Beasley*,
    2020 WL 5709268 (M.D. Pa. Sept. 24, 2020) ....................50

*Metropolitan Life Ins. Co. v. Bancorp Services, LLC*,
    527 F.3d 1330 (Fed. Cir. 2008).........................................36

*Miller v. Beneficial Management Corp.*,
    977 F.2d 834 (3d Cir. 1992) ..............................................37

*Paladino v. Newsome,*
    885 F.3d 203 (3d Cir. 2018) ............................................................23

*Porter v. Pennsylvania Department of Corrections,*
    974 F.3d 431 (3d Cir. 2020) ...................................................*passim*

*Reese v. Sparks,*
    760 F.2d 64 (3d Cir. 1985) ............................................................22

*Reichle v. Howards,*
    566 U.S. 658 (2012) .......................................................................47

*Rinaldi v. United States,*
    904 F.3d 257 (3d Cir. 2018) ..............................................4, 12, 53

*Scott v. Harris,*
    550 U.S. 372 (2007) ................................................................21, 33

*Shivers v. United States,*
    1 F.4th 924 (11th Cir. 2021) .........................................................54

*Shorter v. United States,*
    12 F. 4th 366 (3d Cir. 2021) .................................................*passim*

*SodexoMAGIC, LLC v. Drexel Univ.,*
    24 F.4th 183 (3d Cir. 2022) ..........................................................21

*Spellman v. Sec'y Pennsylvania Dep't of Corr.,*
    751 F. App'x 251 (3d Cir. 2018) ..................................................22

*Travillion v. Wetzel,*
    765 F. App'x 785 (3d Cir. 2019) .............................................31, 32

*Turner v. Miller,*
    679 F. Supp. 441 (M.D. Pa. 1987) ...............................................50

*U.S. Fidelity & Guaranty Co. v. United States,*
    837 F.2d 116 (3d Cir. 1988) ..........................................................56

*United States v. Muniz,*
　374 U.S. 150 (1963) ................................................................50

*Von Milbacher v. Teachers Insurance & Annuity Ass'n,*
　1988 WL 142322 (D.N.J. Dec. 20, 1988) ...............................37

*Ziglar v. Abbasi,*
　582 U.S. 120 (2017) .........................................................*passim*

**Statutes**

18 U.S.C. § 4042 ......................................................................50

28 U.S.C. § 1346(b)(1) ............................................................49

28 U.S.C. §§ 2072 ...................................................................33

28 U.S.C. § 2680(a) .................................................................53

42 U.S.C. § 1983 .................................................................39, 51

## PRELIMINARY STATEMENT

Plaintiff Michael Rinaldi—a federal prisoner who was formerly incarcerated at USP Lewisburg in Pennsylvania—has a simple story to tell a jury. After he angered a unit manager (Defendant Baysore) by filing too many grievances, she had him transferred to a different cell block, which was known to house violent prisoners. Two other officers—Defendants Kissell and Gee—were aware of this plan, but did nothing to stop it. When a third officer (Defendant Beaver) attempted to place Mr. Rinaldi in his new cell, the inmate who was already there (who was known to have assaulted each of the last several individuals housed with him) made a clear and obvious threat: "I am not cuffing up and if you put anybody in here with me, I will kill them and hurt the officer trying to do it." JA396.

Defendants Beaver and Raup were not only aware of this stark threat, they believed it warranted action. They locked Mr. Rinaldi in a shower while working to subdue Pink with the help of a calculated use-of-force team, then charged him with a Code 203 violation for "threatening [Mr. Rinaldi] with bodily harm." *Id.* But, even though Pink was found liable for the threat, Defendants returned him to his cell within two hours. There, predictably, he proceeded to assault Mr. Rinaldi several times. Though Rinaldi was fortunate to escape serious injury, he was certainly

harmed, and he has every reason to believe a jury could conclude that his injuries were caused by Defendants' deliberate indifference to his safety, and failure to protect him from a known threat of violence, in violation of the Eighth Amendment.

And yet, twelve years after attesting to this story in his sworn complaint, Mr. Rinaldi still has not had the opportunity to take a single deposition, and has not received a single document from Defendants in response to his discovery requests. Defendants have instead ignored, and at times obstructed, Mr. Rinaldi's efforts to support his claims, and have erected every legal, procedural, and practical obstacle they can to prevent Mr. Rinaldi from having these claims heard by a jury. And they have been quite successful, persuading the District Court twice to dismiss or enter summary judgment disposing of Mr. Rinaldi's complaint in its entirety.

In its most recent judgment, the District Court concluded that there were no genuine issues of fact from which a jury could conclude that any defendants violated Mr. Rinaldi's Eighth Amendment rights. That's right. Even though it is *undisputed* that Defendants Beaver and Raup (at a minimum) were aware that Pink threatened to kill Rinaldi, and even though Defendants cannot point to any measure they took to *prevent* that from happening, the District Court concluded that no reasonable jury could find that any of the defendants were deliberately indifferent to a substantial risk

of harm to Mr. Rinaldi. As Mr. Rinaldi put it in his pro se brief in this Court, "[t]his is disingenuous and non-sensical. If an inmate informs you that he will kill another inmate if they are placed in a cell together, how can you then say you are not aware of this threat?" D.E 18 at 2–3.

The District Court could only reach that conclusion by ignoring several genuine issues of fact in the record, *see infra* at 23–36, concluding that other facts asserted by Defendants were undisputed merely because Mr. Rinaldi, a pro se litigant, had not perfectly complied with the local rules, *see infra* at 36–40, and deciding Defendants' summary-judgment motion despite knowing that Mr. Rinaldi had been repeatedly frustrated in his ability to pursue discovery that could help prove his claims, *see infra* at 40–43. These errors, independently and certainly in combination, warrant remand.

While Defendants persuaded the District Court that there were no fact disputes precluding summary judgment, their aim on appeal is to persuade *this* Court that none of that matters because there is no cause of action for Eighth Amendment claims of this nature against federal officers. In other words, Defendants ask the Court to hold that the so-called "*Bivens* remedy," which provides a cause of action for certain constitutional claims against federal defendants, does not extend or apply to Mr.

Rinaldi's Eighth Amendment failure-to-protect claims. The District Court did not buy this argument and neither should this Court. Indeed, this Court has already held (*twice*) that *Bivens* extends to exactly the sort of claim Mr. Rinaldi raises here: a claim that Defendants violated the Eighth Amendment by failing to protect Rinaldi from a known, substantial risk of harm posed by another prisoner. Nothing about the Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482 (2022), changes this reality. The Court therefore need not engage any of Defendants' arguments on why *Bivens* should not be "*extended*" to this context for the simple reason that there *already is* a *Bivens* remedy for this type of claim. *See infra* at 43–54.

The Court should also take this opportunity to revisit one of its holdings from Mr. Rinaldi's first appeal. In that case, the Court affirmed the District Court's determination that Mr. Rinaldi's claim under the Federal Tort Claims Act (FTCA)— alleging that the United States was negligent in the manner in which its officers left him exposed to violent assault—is barred by the FTCA's "discretionary function exception." *See Rinaldi v. United States*, 904 F.3d 257, 272 n.15 (3d Cir. 2018). This holding has since been abrogated by the Court's more recent decision in *Xi v. Haugen*, which holds that the discretionary-function exception does not apply where a plaintiff's FTCA claim involves a constitutional violation. 68 F.4th 824, 838 (3d Cir.

2023). Because Mr. Rinaldi's FTCA claim alleges both negligence and violation of the Eighth Amendment, the discretionary-function exception poses no bar. Thus, regardless of the Court's determination of the *Bivens* question, it should at a minimum remand the FTCA claim to the District Court for further proceedings. *See infra* at 54–63.

Mr. Rinaldi has been waiting for more than a decade to present his simple story to a jury. This Court should vacate judgment below and allow him that chance.

## STATEMENT OF THE CASE

### I.    Factual Background

The factual record in this case is underdeveloped, given Mr. Rinaldi's pro se status and inability to obtain meaningful discovery. Much of the background below is drawn from the excerpts of Mr. Rinaldi's depositions that Defendants included with their motions, as well as Mr. Rinaldi's sworn complaint and the amendment thereto. As this Court has recognized, it is proper to "consider as affidavits ... sworn verified complaints, to the extent that they are based upon personal knowledge and set out facts that would be admissible in evidence." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020).

**A. Defendants Baysore, Kissell, and Gee transferred Mr. Rinaldi to a cell with a known violent inmate in retaliation for protected grievance activities.**

Mr. Rinaldi resided at USP Lewisburg between November 2011 and November 2012. JA42. During this time, Mr. Rinaldi filed numerous grievances about conditions at Lewisburg. JA44; JA355–85. These grievances ranged from complaints about the denial of recreation and of his right to Jummah congregation prayer, to unsanitary conditions, to threats by staff members in retaliation for his filing of other grievances. *Id.*

Defendant Baysore was a counselor at Lewisburg responsible for responding to Mr. Rinaldi's grievances. JA307–08. Baysore was responsible for providing grievance forms to Mr. Rinaldi and other prisoners, and acted as the first-line reviewer for Mr. Rinaldi's complaints. *Id.* In addition, as a member of the Unit Team, Baysore was responsible for deciding where Mr. Rinaldi would be housed. JA331–32.

In January 2012, evidently fed up with Mr. Rinaldi's serial grievances, Baysore threatened that "if [Rinaldi] continued to file administrative remedies, [] she would have him moved to a different unit and placed in a cell with an inmate who is known for assaulting his cellmates." JA42; JA309 ("She just was, 'All right. If you keep … filing these remedies, I'll get you moved off the block. I'll get you sent to D block and I'll have somebody do something to you.").

6

Mr. Rinaldi informed his case manager, Defendant Kissell, of the threat. JA310. He knew that Kissell was aware that Baysore and others were "using D block as … a punishment unit and putting the guys that they knew had behavior [problems] over there," and therefore believed that Kissell would understand that Baysore's threat to move him to D block was retaliatory and likely to result in Rinaldi being assaulted. JA314–15. Mr. Rinaldi's hope was that Kissell might intervene to prevent him from being "placed in a cell with somebody who posed a danger to [him]." JA315. But Kissell, who was also a member of the Unit Team, told Mr. Rinaldi that "he wasn't going to get involved in what is going on because it is over his head and they are tired of Mr. Rinaldi filing administrative remedies." JA42; *see also* JA313–14 ("He said something, like, to the effect that it's … already over his head so there is nothing he can do about it.").[1]

When Kissell refused to intervene, Mr. Rinaldi proceeded to file an "Informal Resolution Attempt" on January 29, 2012, requesting that  Lewisburg "discontinue its practice of forcing inmates to cell together regardless of their compatibility." JA333; JA355. He explained that he had previously been assaulted by a cellmate and felt that

---

[1]    Rinaldi also told Defendant Gee that "[he] was being moved [to D Block] because Miss Baysore was upset with [him] about filing administrative remedies and [he] was being moved and [he] was going to get placed in a cell with somebody that I was going to have a problem with." JA319 (Rinaldi Dep. at 34).

"[f]orced double celling creates a hostile environment and increases the incidence of assaults." *Id.* Defendant Baysore denied the request three days later. JA355.

The following day, Defendant Gee came to Mr. Rinaldi's cell to tell him that "he was being moved" from Z Block to D Block, because he "didn't listen when counselor Baysore told him to stop filing administrative remedies." JA42.[2] When Rinaldi protested, Defendant Gee "threatened to call the use of force team and have Rinaldi gassed and placed in restraints." *Id.*

## B. Defendants Beaver and Raup house Mr. Rinaldi and Pink together, despite Pink's threats to harm Mr. Rinaldi.

Mr. Rinaldi was transported from Z Block do D Block on February 2, 2012. JA16. Although Mr. Rinaldi did not recall who specifically transferred him from one unit to the other, he knows (and Defendants agree) that Defendants Beaver and Raup were there when he was to be placed in the new cell. JA265; JA295; JA335–36. The new cell, D-218, already housed a prisoner named Altrozo Pink. JA310; JA397.

Pink was known to be violent. As Mr. Rinaldi later learned, he had physically assaulted each of the previous four or five cellmates who had been placed with him,

---

[2]     Though Defendants, in their Answer, denied that Mr. Rinaldi was transferred to D Block as a retaliatory measure, they have provided no alternative explanation for the move. They declined, moreover, to answer an interrogatory specifically asking why Mr. Rinaldi was transferred and whether it is "common for inmate[s] to be moved from one housing unit to another for no particular reason[.]" JA275.

because he was nearing the end of his term and felt he should have a cell to himself. JA34–35. He also assaulted the next inmate who followed Rinaldi, as well. *Id.*

Before they could place Mr. Rinaldi in the cell, the officers needed to restrain Pink. However, when Beaver attempted to put hand restraints on Pink through the slot in the cell door, Pink refused and stated, "I am not cuffing up and if you put anybody in here with me I will kill them and hurt the officer trying to do it." JA336; JA397. It does not appear that Mr. Rinaldi heard this specific threat. *See, e.g.*, JA476.[3] The guards, however, definitely did. *See* JA397. They not only heard the threat, but took it seriously enough to call for a "calculated use of force team" to "remove Pink from the cell and to place him in ambulatory restraints due to his disruptive behavior." JA338–39.[4] While Pink was forcibly removed from the cell, Rinaldi was locked in a shower for his own safety. JA339. Mr. Rinaldi was only placed into the new cell after Pink had been removed. *Id.*

---

[3]    When called as a witness at Pink's later disciplinary hearing, Mr. Rinaldi stated that he did not hear Pink threaten to kill him. However, as has explained, he did not testify that Pink had not threatened, him; only that he had not heard the threat, as Pink had been speaking to the officers, not Rinaldi. JA476.

[4]    A calculated use of force team is sued "to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevents serious property damage, and to ensure institution security and good order." JA338.

Defendants not only felt that Pink's threat warranted immediate protective action, they concluded it warranted disciplinary charges. Defendant Beaver prepared an incident report charging Pink with a code 203 violation for "[t]hreatening another with bodily harm." JA336; JA396. That same day, Defendant Raup informed Pink of the charge, warned him that he had the right to remain silent, and asked if he wished to make a statement. JA336. Raup then forwarded the incident report to the Unit Discipline Committee for further action. JA337. A disciplinary hearing officer "ultimately found [that] Pink committed" the Code 203 violation. JA343.

Despite knowing of Pink's threat, and deeming it serious enough to warrant both protective and disciplinary action, Defendants proceeded to return Pink to the cell, now with Rinaldi inside it, a mere two hours after the threat was made. JA339–40. Predictably, Pink carried out his threat. Though he did not kill Mr. Rinaldi, Pink assaulted him several times over days, as a result of which Rinaldi suffered "cuts and bruises and emotional distress." JA42; *see also* JA322 (describing "busted lip and things of that nature").

Correctional staff were aware of these assaults (and of the injuries to Mr. Rinaldi), but did not intervene because they knew that this sort of rough treatment

was exactly what Defendant Baysore had in mind when she ordered Rinaldi transferred to D Block. As Mr. Rinaldi explained during his first deposition:

> [T]hey were aware of what was going on because ... people knew that I had an issue with Miss Baysore. They knew why I was moved over there. They knew why I was placed in the cell with him. ... Nobody wanted to intervene because they understood what I was being placed in the cell for. They understood that this was being done as a punishment so who's going to intervene when they already understand what this is and why you're here or what this is about.

JA323–24.

## II.    Procedural Background

### A. *Rinaldi I*: The District Court incorrectly dismisses Mr. Rinaldi's Complaint on exhaustion grounds.

Mr. Rinaldi commenced this lawsuit on February 19, 2013, with a verified pro se complaint raising a number of claims, all arising out of his incarceration at Lewisburg. JA40–45. As still relevant here, he alleged that Defendants violated his First Amendment rights by retaliating against him for filing grievances and violated his Eighth Amendment rights by showing deliberate indifference to, and failing to protect him from, the known risk of harm posed by forcing him to share a cell with a prisoner who had threatened to kill him. JA43–44; JA50–51.

Three months later, Defendants responded with a motion to dismiss, or alternatively for summary judgment. JA54. The motion did not indicate why the

complaint should be dismissed, but Defendants filed a brief two months later raising several affirmative defenses, including failure to exhaust, and arguing that Rinaldi could not state claims to relief under either *Bivens* or the Federal Tort Claims Act (FTCA). JA57–58. Mr. Rinaldi responded with a letter explaining that "there are numerous misstatements and inaccurac[ie]s" in Defendants' brief, but that "without discovery I cannot properly defend this." JA94.

The District Court granted Defendants' motion in May 2015, two years after it was filed. JA96. The court dismissed all claims against the United States, and against the individual defendants in their official capacities, on grounds of sovereign immunity, holding that the discretionary-function exception to the FTCA's waiver of immunity applied. JA107–11. The court also held that Mr. Rinaldi had failed to exhaust administrative remedies in connection with his First and Eighth Amendment claims, and failed to state adequate claims for relief on the remaining counts of his complaint. JA115–29.

Mr. Rinaldi timely appealed, and this Court affirmed in part and reversed in part. *See Rinaldi v. United States*, 904 F.3d 257 (3d Cir. 2018). In a lengthy decision, the Court held that administrative remedies are "unavailable," and therefore need not be exhausted, when a prisoner is intimidated from using the grievance process. *Id.* at

265–70. It directed the District Court to consider on remand whether Mr. Rinaldi was subjectively deterred from exhausting his First Amendment retaliation claim. *Id.* at 270. With respect to the Eighth Amendment Claim, the Court held that Mr. Rinaldi *had* properly exhausted because his grievance "was denied at the highest level on the merits." *Id.* at 272. However, the Court affirmed the District Court's dismissal of Mr. Rinaldi's FTCA claim, agreeing that the challenged conduct fell within the discretionary-function exception. *Id.* at 273. The case thus returned to the District Court, five years after the initial complaint had been filed.

**B. *Rinaldi II*: The District Court incorrectly grants summary judgment on Rinaldi's remaining claims.**

**1.** On remand, the District Court ordered Defendants to address whether Mr. Rinaldi was deterred from exhausting administrative remedies for his retaliation claim. *See* JA37 (Dkt. No. 60). After convincing the court to modify its order to permit briefing on "the threshold issue of whether a *Bivens* remedy extends to First Amendment retaliation claims … and whether defendants are entitled to qualified immunity," JA212, Defendants filed another motion to dismiss, or for summary judgment on, Mr. Rinaldi's remaining claims. JA206. To this point, no discovery had taken place in the case, over six years after the complaint was filed.

The District Court granted the defendants' motion in part and denied it in part. JA250. With respect to the First Amendment retaliation claim, the District Court concluded that there was no *Bivens* remedy and that Mr. Rinaldi was not excused from exhausting administrative remedies because he was not subjectively deterred from filing grievances about it. JA230, 239. With respect to the Eighth Amendment claim, the District Court held that there *is* a *Bivens* remedy, but that several defendants were entitled to qualified immunity. JA244, 248. The District Court permitted Mr. Rinaldi's Eighth Amendment claims to proceed against Defendants Kissell, Baysore, and Gee. JA251. And, recognizing that "[t]he parties have not yet been afforded the opportunity to engage in discovery," the District Court issued a scheduling order providing for a six-month discovery window, to be followed by further dispositive motions. JA254.[5]

**2.** Though finally permitted to commence discovery six years after filing the lawsuit, Mr. Rinaldi continued to encounter significant obstacles. The District Court denied his repeated requests for the assistance of counsel, JA256–71, and Defendants largely ignored the discovery requests Mr. Rinaldi attempted to make on his own, *see* JA272–73 (letter noting Defendants' noncompliance with discovery requests).

---

[5]     The District Court later allowed Mr. Rinaldi to amend his complaint to add Defendants Beaver and Raup. JA282–83, 298.

The only discovery that took place was Defendants' deposition of Mr. Rinaldi, which was conducted on August 6, 2019, and again (after Rinaldi was permitted to amend his complaint to add new defendants) on January 7, 2021. Prior to both depositions, Mr. Rinaldi requested to have an attorney present, but was denied. *See* JA256, 265; JA264, 271.[6] Ultimately, Defendants included only portions of the deposition transcripts, as exhibits to their Motion for Summary Judgment. *See* JA403– 13.[7]

Discovery closed on January 11, 2021, before Mr. Rinaldi had taken any depositions or obtained any responses to his discovery requests. Defendants then filed a motion for summary judgment, JA325, arguing that no *Bivens* remedy existed for Mr. Rinaldi's Eighth Amendment failure-to-protect claim. JA430–31. In the alternative, Defendants argued that they were entitled to summary judgment because

---

[6]     When Mr. Rinaldi first requested counsel at his deposition, he believed the District Court had stated that he did not need his own counsel because Defendants' counsel could answer any questions he had. *See id.* However, when he raised this at his deposition, Defendants' counsel made clear he could not answer any questions and would move for sanctions, including dismissal, if Mr. Rinaldi did not continue with the deposition, uncounseled. JA303–04. Mr. Rinaldi therefore participated, subject to an objection that he was not provided counsel. JA305.

[7]     The entirety of Mr. Rinaldi's first deposition is included on the District Court's docket only because the court ordered Defendants' to provide him with a copy. That full transcript is reproduced at the end of the Joint Appendix, JA514–81.

the record revealed no genuine disputes of material fact warranting a trial. JA451–54

Specifically, Defendants argued that the record showed that none of the defendants

had the requisite knowledge that Mr. Rinaldi was at risk of harm from Pink and that

there was no evidence from which a reasonable factfinder could infer such knowledge.

JA454–60. To support this argument, Defendants pointed to their Statement of

Material Facts and supporting exhibits. JA328–416.

Mr. Rinaldi objected to Defendants' Motion for Summary Judgment, JA481–

84, and included a separate objection to the consideration of exhibits that had not

been shared with him during discovery, JA478–80, and a counter-statement of

material facts in dispute, JA474–76. In his opposition, Mr. Rinaldi noted that the

District Court had already recognized a *Bivens* remedy for Eighth Amendment claims

and that there were numerous factual disputes that a jury should determine. JA481–

82. In particular—and as alleged in the verified Complaint and Amendment and

discussed further at his deposition—Mr. Rinaldi pointed out that all of the remaining

defendants were aware of the threat Pink had made and yet none did anything to

protect him. JA482–83.

In its ruling, the District Court first rejected Defendants' argument that *Bivens*

does not provide a remedy for Mr. Rinaldi's claims. JA21–25. However, despite Mr.

16

Rinaldi's objection, the court held that there were no genuine facts at issue for trial. JA27. In particular, because Mr. Rinaldi's statement of facts did not precisely comply with Local Rule 56.1, the District Court deemed the facts set forth by defendants to be "undisputed." JA12. Based on these "undisputed" facts, the District Court held that there was "no evidence from which a reasonable factfinder could conclude that Defendants were aware that inmate Pink posed a serious risk of harm to Rinaldi" or that the defendants had responded unreasonably to Pink's threats. JA25.

Mr. Rinaldi filed a motion for reconsideration, arguing that there were clear material facts in dispute that would have allowed a reasonable factfinder to find that Defendants were aware of the danger Pink posed to Mr. Rinaldi, and yet obviously did nothing to protect him from the assaults Rinaldi endured after being housed with him. JA501–03. The District Court denied the motion, JA513, and this appeal followed.

### C. Proceedings on Appeal

Mr. Rinaldi filed an initial appellate brief pro se. *See* D.E. 18. He argued that the District Court erred in refusing to appoint counsel, thereby limiting his ability to participate in discovery, and in granting summary judgment on factual issues that hinged on the credibility of witnesses. *Id.* at 3–5. He also moved for appointment of

17

counsel on appeal. *Id.* In their response, Defendants argued principally that this Court should affirm on the alternative ground that there is no *Bivens* remedy for Mr. Rinaldi's claims. D.E. 22 at 16–33. However, they also argued that the District Court had correctly concluded that no reasonable factfinder could have found in Mr. Rinaldi's favor, and that they were in any event entitled to qualified immunity. *Id.* at 34–40.

After the appeal was fully briefed, this Court granted Mr. Rinaldi's motion for counsel and appointed undersigned counsel to brief (among other issues identified) "whether a *Bivens* remedy exists as to Rinaldi's Eighth Amendment failure-to-protect claims in light of *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022)." D.E. 26.

## SUMMARY OF THE ARGUMENT

The District Court erred in granting summary judgment on Mr. Rinaldi's Eighth Amendment claim because the record reveals genuine issues of disputed fact. Defendants have never denied that they were aware of the general threat posed to Mr. Rinaldi by housing him with Mr. Pink and there is no dispute that at least Defendants Beaver and Raup were aware of Mr. Pink's very specific threat to kill Mr. Rinaldi if he was placed in the cell. Though the evidence shows that Defendants took the threat

seriously enough to charge Pink with "threatening another with bodily injury," there is no evidence that Defendants took *any* steps to protect Mr. Rinaldi from this known threat. Instead, they allowed Mr. Pink to return to the cell, where he proceeded to assault Mr. Rinaldi multiple times. Plainly, a jury could conclude that this course of action evinced deliberate indifference to a known risk of harm. While Mr. Rinaldi was fortunate to escape these assaults with only "minor" injuries, that happenstance does not foreclose his Eighth Amendment claims. At most, there is a dispute of fact regarding the degree of his injuries, which would impact a potential damages award, but not his entitlement to relief. *See infra* at 20–33.

The District Court overlooked these genuine issues of fact in the record precluding summary judgment in part because it deemed many of Defendants' statements of fact to be true and undisputed, merely because Mr. Rinaldi had not contested them in the manner prescribed by local rule. This wooden application of the local rule conflicts with federal rules, and cases, requiring that inferences at summary judgment be drawn in favor of the *non*moving party, and that courts treat pro se plaintiffs like Mr. Rinaldi with a lenience. *See infra* at 32–35. It compounded these errors by permitting Defendants to move for summary judgment, and deciding their

motion, despite the fact that Mr. Rinaldi had not had the opportunity to pursue discovery. *See infra* at 35–37.

While the District Court erred in its evaluation of the factual record, it correctly rejected Defendants' argument that there is no *Bivens* remedy for claims like Mr. Rinaldi's. The Supreme Court recognized thirty years ago that *Bivens* claims may be brought against federal officers alleging deliberate indifference to a known threat of inmate-on-inmate violence, in violation of the Eighth Amendment. And this Court has twice held that *Bivens* extends to exactly the context presented here, rebuffing each time arguments remarkably similar to those Defendants continue to advance on appeal. *See infra* at 37–47.

Independent of the *Bivens* question, the Court should revive Mr. Rinaldi's FTCA claim, in light of intervening authority abrogating its previous ruling that the discretionary-function exception barred Rinaldi's claim. The Court's recent decision in *Haugen*, revives Mr. Rinaldi's FTCA claim at the pleading stage (which is when it was dismissed). Therefore the District Court should be directed to reconsider the FTCA claim, in addition to Mr. Rinaldi's *Bivens* claims, on remand. *See infra* at 48–56.

# ARGUMENT

I.  **The District Court erred in granting summary judgment despite the presence of genuine issues of fact that could be resolved in Mr. Rinaldi's favor.**

A motion for summary judgment should not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is considered "material" when it has "the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). And a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 203–04; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this evaluation, the court must view the facts and draw reasonable inferences "in the light most favorable to the party opposing the motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration omitted).

As Mr. Rinaldi has repeatedly pointed out, there is plainly a dispute over whether Defendants acted with deliberate indifference to the known threat of harm posed by placing him in a cell with Pink after Pink threatened to kill him. The District Court was only able to look past that dispute by concluding that Defendants' version of events was "undisputed" because Mr. Rinaldi failed to file a statement of facts in the format required by a local rule. This was an unduly severe application of

procedural rules against a pro se plaintiff, particularly one who had repeatedly sought the appointment of counsel and complained that Defendants were refusing to comply with discovery requests. In view of the genuine fact issues that emerge even from the cramped record on appeal, this Court should reverse the entry of summary judgment and remand for further proceedings.

### A. There is a genuine dispute of fact concerning Defendants' deliberate indifference to the known risk that Mr. Rinaldi would be assaulted.

A district court "cannot grant a defendant's motion for summary judgment solely on the finding that a plaintiff's response was insufficient." *Spellman v. Sec'y Pennsylvania Dep't of Corr.*, 751 F. App'x 251, 252 n.2 (3d Cir. 2018) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)). Rather, a court "properly analyze[s] the motion based on what the [party] placed before it." *Id.* Here, that includes not only the exhibits Defendants brought to the court's attention, but also Mr. Rinaldi's Complaint and the amendment thereto, each of which averred material facts under penalty of perjury. *See Porter*, 974 F.3d at 443.[8]

This Court has also held that a plaintiff's own sworn deposition testimony can be sufficient to avoid summary judgment phase when it "set[s] forth specific facts that

---

[8]    Both Mr. Rinaldi's complaint and amended complaint were sworn under the penalty of perjury, and therefore may be treated as an affidavit for the purpose of opposing Defendants' summary-judgment motion. *See Reese v. Sparks*, 760 F.2d 64, 67 n.3 (3d Cir. 1985).

reveal a genuine issue of material fact." *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018). Indeed, "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." *Id.* That is so even if the information is "self-serving," because a court "may not make credibility determinations or engage in any weighing of the evidence." *Id.* at 209–10.

1. **There is a genuine dispute about Defendants' awareness of, and deliberate indifference to, a credible threat of bodily harm to Mr. Rinaldi.**

The record shows that each of the defendants who remain in the case was aware of, and disregarded, a threat to Mr. Rinaldi's safety. This is clearly alleged in both the verified Complaint and its amendment, and supported by Mr. Rinaldi's deposition and the statement of facts submitted in opposition to Defendants' motion for summary judgment. Indeed, Defendants do not seriously contest that they were *aware* of the threat, only that that they did not act unreasonably in response. But, at best, that is a question for the jury, and there is ample evidence from which a jury could conclude that Defendants were deliberately indifferent to a serious risk of harm.

### a. A reasonable jury could find that Defendants were aware of the threat to Mr. Rinaldi.

In his sworn complaint, Mr. Rinaldi alleged that Defendant Baysore informed him that "if he continued to file administrative remedies that she would have him moved to a different unit and place in a cell with an inmate who is known for assaulting his cellmates." JA42; *see also* JA309. Mr. Rinaldi further alleged that he reported this threat to Defendant Kissell, who responded that he would not "get involved because [this issue] was over his head and they were tired of Rinaldi filing administrative remedies." JA42; *see also* JA313–15. And he alleged that Defendant Gee was aware, because it was Gee who told him that he was being moved to a new cell "because he didn't listen when counselor Baysore told him to stop filing administrative remedies." JA42; JA405–06.

In concluding that Baysore, Kissell, and Gee were unaware of a risk of harm to Mr. Rinaldi, the District Court focused only on whether there was evidence of a particular history of violence between Pink and Rinaldi. *See* JA27–29. This ignores Mr. Rinaldi's sworn statements that all three knew that Baysore had specifically ordered Rinaldi transferred to D Block *so that he would be assaulted*. As Mr. Rinaldi testified at his deposition, Baysore told him that if he kept filing grievances, she would "get [him] sent to D block and … have somebody do something to you." JA309. Mr.

Rinaldi further asserted, in his sworn Complaint and his deposition testimony, that Defendants Kissel and Gee were aware that Baysore's threat to move Rinaldi to D Block was retaliatory and likely to result in Rinaldi being assaulted. JA42; JA313–15, 319.[9] Indeed, Mr. Rinaldi testified that Gee told him that Baysore directed that Rinaldi be "placed in a cell with somebody that [he] was going to have a problem with." JA319.[10]

Thus, even with respect to Defendants Baysore, Kissell, and Gee—who did not witness Pink's threat—there is ample evidence from which a jury could conclude that they were aware of a risk of harm to Mr. Rinaldi should he be transferred to D Block. This case does not turn, as the District Court suggested, on the simple possibility that "an inmate with a history of violence might attack another inmate for an unknown reason." JA28 (quoting *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012)). Instead,

---

[9]     Mr. Rinaldi also asserted in his Statement of Facts that Defendants Beaver and Raup knew that he was being placed with inmate Pink in order to "punish [him] for filing grievances." JA474; *see also* JA323–24. But even if these defendants were not *previously* aware of the planned threat to punish Rinaldi, they were certainly aware of the immediate threat posed by Mr. Pink, as they heard it firsthand.

[10]    Because Defendants Baysore, Kissel, and Gee are all party opponents, Mr. Rinaldi's sworn recollection of their statements does not consist of inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2).

as Mr. Rinaldi attested in both his sworn Complaint and under oath at his deposition, the risk of violence toward Rinaldi was *the entire point* of the transfer.

Of course, as the District Court appears to have recognized, the record is even clearer with respect to Defendants Beaver and Raup.[11] After all, they heard first-hand the stark threat that Mr. Pink made when Rinaldi was brought to his cell: "[I]f you put anybody in here with me, I will kill them and hurt the officer trying to do it." JA336; JA396. Beaver quoted that threat in a disciplinary ticket for Mr. Pink, charging him with "[t]hreatening another [i.e. Mr. Rinaldi] with bodily harm." JA336; JA397. That same day, Defendant Raup informed Pink of the charge, warned him that he had the right to remain silent, and asked if he wished to make a statement. JA336.

Obviously, both Beaver and Raup were personally aware of the threat of serious harm to Mr. Rinaldi, inasmuch as they charged Pink with threatening to inflict bodily harm based on their own observations. Thus, Defendants' statement that "[n]either Defendant Beaver nor Defendant Raup knew of any information, intelligence, or specified threat, indicating Altrazo Pink and Rinaldi were incompatible as cellmates,"

---

[11]     The District Court does not appear to have found that Defendants Beaver and Raup were unaware of a risk of harm to Mr. Rinaldi, but rather that they acted reasonably in the face of a known risk. *See* JA30–31. But the record reveals genuine disputes of fact on this point, as well.

JA337, is not only disputed, but in fact *indisputably false*. Mr. Rinaldi's attempt to highlight this for the District Court was ignored. *See* JA475.

>    **b. A reasonable jury could find that Defendants knew the threat was serious.**

There was also a genuine issue of fact regarding the severity and credibility of the threat made to Mr. Rinaldi.  Mr. Rinaldi contended that Defendant Baysore specifically ordered his new cell assignment because of the bodily threat posed to Mr. Rinaldi by his new cellmate. JA42; *see also* JA313–15. He similarly alleged that Defendants Kissell and Gee were aware of Defendant Baysore's retaliatory motivation in changing his celling assignment and were therefore aware of the risk that Mr. Rinaldi's new cellmate would pose. JA42; JA313–15. As Mr. Rinaldi testified when explaining why staff members did not intervene to stop his later fights with Pink, everyone knew that he had been transferred to D Block and placed with Mr. Pink precisely so that he would be assaulted. JA323–25.

The severity of the threat became even more clear when Defendants Beaver and Raup attempted to place Mr. Rinaldi in the cell with Mr. Pink. After hearing Pink threaten to kill Mr. Rinaldi, they triggered the deployment of a "calculated use of force team" to "remove Pink from the cell and place him in ambulatory restraints due to his disruptive behavior." JA339. They then prepared and served upon Pink an

incident report charging Pink with a code 203 violation for "[t]hreatening another with bodily harm." JA336; JA396. Insofar as Defendant Beaver personally prepared this charge, based on his own observations, and Defendant Raup personally served it on Pink, they cannot now claim that Pink's statement was anything less than a threat to impose "bodily harm" on Mr. Rinaldi.

Here again, given these *undisputed* facts in the record, it is difficult to understand how Defendants could represent to the District Court that Pink's threat was "unverified." JA333. As Mr. Rinaldi pointed out in his opposition, Pink was charged with *and found guilty* of the offense of threatening bodily harm. *See* JA476 ("[Pink's] threat was deemed credible and was verified. Accordingly, the [Disciplinary Hearing Officer] found Pink guilty of the offense.").

### c. A reasonable jury could find that Defendants were deliberately indifferent to this known, serious threat.

Despite knowing of a serious threat to Mr. Rinaldi, Defendants did nothing to protect him, thereby evincing deliberate indifference to his safety. Defendants Bayshore and Raup initially locked Mr. Rinaldi in a shower while the use-of-force team removed Pink from the cell; but they and others, including Defendant Bayshore, allowed Pink to return to the cell a mere two hours later without taking any measures to protect Rinaldi. JA339–40.

While a *reasonable* response to a known risk of harm may insulate a defendant from liability for deliberate indifference, *see Bistrian*, 696 F.3d at 367, a jury could certainly conclude that this response was not reasonable. As Mr. Rinaldi asked at his deposition: "They actually wrote him an incident report saying that he told them he was going to kill me. So why—if you know that—if you write him this incident report, why would you still force in a cell together after writing him an incident report saying that he told you he was going to kill me[?]" JA315. A jury might reasonably ask the same question.

In its decision, the District Court found that Raup and Beaver had acted reasonably because they separated Pink and Rinaldi at the time the threat was made and were not part of the "Unit Team" that made cell assignments. JA29.[12] However, a jury could reasonably conclude that, having witnessed the severity of the threat and made the subjective determination that it was serious enough to warrant charging Pink with "threatening bodily harm" to Mr. Rinaldi, Raup and Beaver should have done more to protect Rinaldi from that very threat.

---

[12]    To the extent the District Court believed that only the Unit Team was responsible for placing Mr. Rinaldi in Pink's cell, that would not exonerate Defendants Baysore and Kissell, both of whom were members of the Unit Team. *See* JA309–11.

Here again, Mr. Rinaldi's sworn testimony that all of the defendants, among other staff, knew that he was transferred to D Block for the very purpose of causing him to be assaulted is relevant to assessing the reasonableness of Beaver and Raup's response. As he explained,

> [P]eople knew that I had an issue with Miss Baysore. They knew why I was moved over there. They knew why I was placed in the cell with him. … Nobody wanted to intervene because they understood what I was being placed in the cell for. They understood that this was being done as a punishment so who's going to intervene when they already understand what this is and why you're here or what this is about.

JA323–24.

Inasmuch as Defendants were all indisputably aware of a serious threat of harm to Mr. Rinaldi, and yet did nothing to prevent it, a reasonable jury could conclude that they were deliberately indifferent in violation of the Eighth Amendment.

### 2. There is a genuine issue regarding the extent of injuries Mr. Rinaldi suffered as a result of the defendants' deliberate indifference.

The District Court absolved Defendants from ignoring the risk of harm to Mr. Rinaldi in part because he "never presented [to the medical department] with concerns or injuries related to being assaulted by his cell mate in February, 2012." JA31. In other words, even though Defendants never contested the injuries that Mr. Rinaldi states he sustained in the repeated altercations with Pink, the District Court

effectively concluded that he was not hurt badly enough to implicate the Eighth Amendment. This is simply wrong. A plaintiff alleging deliberate indifference need not establish that he ultimately *suffered* serious injuries in order to prevail; only that defendants were indifferent to an objectively serious *threat* of harm.

As this Court has explained:

> [T]he Eighth Amendment not only protects against harm, but also protects against the *risk* of harm. [A plaintiff] must show a substantial risk of serious harm, Defendants' deliberate indifference to that risk, and that the deliberate indifference *caused* him *some* harm, not necessarily *serious* harm. While the degree of injury may be a relevant consideration for a determination of damages, it is not a threshold issue that would defeat a failure to protect claim at the summary judgment stage.

*Travillion v. Wetzel*, 765 F. App'x 785, 794–95 (3d Cir. 2019) (internal citations omitted). Here, there is no dispute that Mr. Rinaldi suffered "*some* harm." The *degree* of harm that he suffered is a matter for the jury to determine in its consideration of damages.

In his deposition, Mr. Rinaldi testified that he was assaulted by Mr. Pink at least four or five times. JA322. He also testified to the nature of his resulting injuries, describing them as a "busted lip and things of that nature," *id.*, and he asserted that as "a result of these assaults, [he] suffered from cuts, bruises, and pain." JA51; JA475. These injuries plainly clear the threshold of physical "harm" required to survive

31

summary judgment. *See Travillion*, 765 F. App'x at 787, 795 (injuries described by nurse as "superficial scratches" sufficient to be presented to jury).[13]

In addition to questioning the severity of these injuries, the District Court deemed Mr. Rinaldi's allegations "conclusory" because he lacked supporting medical records. JA31. But "there is no requirement that [a] claim of injury be substantiated in contemporaneous medical records" in deliberate-indifference cases. *Lunney v. Brureton*, 2007 WL 1544629, at *13 (S.D.N.Y. May 29, 2007), *report and recommendation adopted*, 2007 WL 2050301 (S.D.N.Y. July 18, 2007); *see also Griffin v. Crippen,* 193 F.3d 89, 91–92 (2d Cir. 1999) (Eighth Amendment excessive-force claim could proceed to trial despite lack of medical records). While the absence of medical records may lead a jury to conclude that Mr. Rinaldi's injuries were not severe enough to warrant significant damages, the District Court was wrong to take that determination from the jury by granting summary judgment.

---

[13]    Mr. Rinaldi also alleged that he suffered emotional distress as a result of these attacks. JA42. While purely emotional injuries are not compensable under the Prison Litigation Reform Act, they may be presented to a jury when accompanied by physical injuries that are more than *de minimis*. *Travillion*, 765 F. App'x at 795 n.19.

**B. The District Court improperly ignored these factual disputes due to its overly restrictive application of Local Rule 56.1.**

For the purpose of summary judgment, the District Court was required to resolve any genuine factual disputes against Defendants, drawing all reasonable inferences in Mr. Rinaldi's favor. *Scott,* 550 U.S. at 378. Instead, it ignored the factual disputes in the record, not because there was a lack of evidentiary support, but because Mr. Rinaldi failed to summarize them properly in a statement of disputed facts complaint with local rules. *See* JA12 n.1.

While trial courts have the authority and discretion to adopt local rules of procedure, a court cannot apply these rules in a manner that would conflict with the Federal Rules of Civil Procedure or other federal law. *Anchorage Assocs.*, 922 F.2d at 173 ("District courts are authorized to prescribe rules for the conduct of court business so long as those rules are consistent with the Acts of Congress and the Federal Rules of Procedure."); *see generally* Fed. R. Civ. P. 83(a)(1) ("A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075."). Thus, the District Court was precluded from any application of the local rules that would conflict with federal rules governing summary judgment.

Middle District of Pennsylvania Local Rule 56.1 required Mr. Rinaldi to include with his brief opposing summary judgment a "separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] … as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56.1. However, Mr. Rinaldi, a prisoner proceeding pro se (having had multiple requests for the assistance of counsel denied), did not have access to the Local Rules. *See* JA255–45; JA265; JA272–73. Nevertheless, he substantially complied with them by submitting a list of numbered facts corresponding with, and disputing, specific paragraphs in Defendants' statement of facts. *See generally* JA473–75. The District Court's refusal to consider these disputes (and to adopt as undisputed Defendants' statement) conflicted both with the federal rules governing summary judgment and the requirement that "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e).

This Court has noted the Supreme Court's "insiste[nce] that the pleadings prepared by prisoners who do not have access to counsel be liberally construed and … that some procedural rules must give way because of the unique circumstance of incarceration." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While district courts may properly use their local rules to narrow the issues for trial,"

this Court has not endorsed the strict application of such rules against pro se litigants. *Abdullah v. Seba*, 658 F. App'x 83, 84 n.1 (3d Cir. 2016); *see also id.* ("[W]hether [local] rules may be applied to *pro se* litigants, particularly those who make a substantial attempt to comply, is a separate question that we have not yet addressed.").

With respect to local rules requiring statements of facts in support of, and opposition to, summary judgment, courts generally afford pro se plaintiffs a degree of lenience. In *Meronvil v. Doe*, for example, the court accepted a pro se litigant's declaration in lieu of the statement of facts that the District of New Jersey's Local Rule 56.1 required. 2023 WL 4864383, at *5 & n.4 (D.N.J. July 31, 2023). Likewise, in *Miller v. Berrios*, the court considered whether a pro se plaintiff's "Certification in Opposition to Summary Judgment" demonstrated disputed facts even though the plaintiff had failed to submit the statement required by the same New Jersey local rule. 2023 WL 3452623, at *2 (D.N.J. May 15, 2023).

Here, while Mr. Rinaldi's opposition to summary judgment did not include a perfect Statement of Facts under Rule 56.1, there can be little doubt that he "ma[d]e a substantial attempt to comply," *Abdullah*, 658 F. App'x at 84 n.1, such that the District Court should not have applied the rule rigidly to ignore the factual disputes Mr. Rinaldi attempted to bring to light.

**C. The District Court erred in granting summary judgment when it was clear additional discovery was needed.**

To the extent Mr. Rinaldi failed to produce substantial evidence opposing summary judgment, that omission can hardly be held against him. After all, he made repeated requests to Defendants to produce documents relevant to his claims, brought Defendants' intransigence to the District Court's attention, and asked for the counsel to be appointed to assist with discovery. *See* JA272–73 (letter noting Defendants' noncompliance with discovery requests); JA274–77 (unanswered requests for production); JA255–56, 265, 272–73 (requests for assistance of counsel). Mr. Rinaldi also brought these issues to the District Court's attention in his objections to Defendants' summary-judgment motion. JA478–80. Under the circumstances, the District Court should not have entered summary judgment when it was clear that Mr. Rinaldi had not been able to obtain meaningful discovery in support of his claims.

This court has held that district courts are "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007); *see also, e.g.*, *Metro. Life Ins. Co. v. Bancorp Servs., LLC*, 527 F.3d 1330, 1336–37 & n.3 (Fed. Cir. 2008) (noting that "the prevailing rule in all circuits" is that "parties must be afforded adequate time for general discovery before being required to respond to a motion for summary

judgment"). Accordingly, there is a "strong presumption against granting summary judgment on a partially-developed record." *Von Milbacher v. Tchrs. Ins. & Annuity Ass'n*, 1988 WL 142322, at *4 (D.N.J. Dec. 20, 1988).

Indeed, this Court has held that it is an abuse of discretion to grant summary judgment when discovery is incomplete—even where a plaintiff has not made a formal request to extend discovery under Rule 56(d). *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992); *see also Hart v. City of Philadelphia,* 779 F. App'x 121, 129 (3d Cir. 2019) (failure to grant plaintiff's informal request for additional discovery was an abuse of discretion because, "[i]f discovery is *incomplete*, a district court is *rarely justified* in granting summary judgment").

The record makes clear that Mr. Rinaldi informed the court repeatedly that he lacked the opportunity to sufficiently develop evidence to support his claims. Because he lacked access to the local rules, Mr. Rinaldi's initial discovery requests did not conform precisely to Local Rule 5.4. *See* JA94. When Defendants refused to respond to these requests, Mr. Rinaldi alerted the District Court and requested compliance. JA272–77. He even included some of his requests as an attachment to the letter, making it simple for the District Court to order compliance. JA274–77. Nevertheless, the District Court failed to act on the request and Defendants continued to pretend as

though they had never received Mr. Rinaldi's interrogatories or requests for production. *See* JA487–89. When confronted with Defendants' summary-judgment motion, Mr. Rinaldi again alerted the District Court to the fact that he had been stifled in his attempts to obtain relevant discovery. JA478–80.

Given Mr. Rinaldi's repeated attempts to inform the court of the insufficiency of his discovery, and the liberal construction that this court generally offers pro se litigants, the District Court should have denied or deferred ruling on Defendants' motion until Mr. Rinaldi received the discovery to which he was entitled. While even the artificially limited record on appeal reveals fact disputes that should have precluded summary judgment, this Court may alternatively vacate the judgment and remand with the instruction that further discovery be permitted. *See Hart*, 779 F. App'x at 129 (3d Cir. 2019)

## II.    Mr. Rinaldi's claims are cognizable under *Bivens*.

In its order appointing counsel, this Court directed counsel to address "whether a *Bivens* remedy exists as to Mr. Rinaldi's Eighth Amendment failure-to-protect claims in light of *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022)." D.E. 26. As the District Court properly found, *Bivens* does extend to Mr. Rinaldi's Eighth Amendment claims.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court recognized an implied damages remedy against federal officers who violate certain constitutional rights, akin to the statutory cause of action that 42 U.S.C. § 1983 provides against *state* officers. 403 U.S. 388 (1971). For obvious reasons, the implied right of action under *Bivens* is essential to protecting the rights of individuals incarcerated in federal prisons. As Chief Justice Rehnquist observed, "[i]f a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, …." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001).

Though *Bivens*, itself, involved the Fourth Amendment right against unreasonable searches and seizures, 403 U.S. at 397, the Supreme Court has expressly established *Bivens* remedies in two other contexts, as well: unlawful discrimination in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). Most relevant here, the Supreme Court has *recognized* (if not established) that *Bivens* extends to claims that prison officials violate the Eighth Amendment by failing to protect inmates from known risks of substantial harm posed by other inmates. *Farmer v. Brennan*, 511 U.S. 825 (1944). Following

*Farmer,* this Court has expressly recognized a *Bivens* remedy for Eighth Amendment failure-to-protect claims. *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2018); *Shorter v. United States*, 12 F. 4th 366, 373 (3d Cir. 2021) (same).

In recent years, the Supreme Court "has urged caution before extending *Bivens* remedies into any *new context.*" *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017) (internal quotation marks removed; emphasis added). "[A] *Bivens* remedy will not be available" in a new context if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* However, the Court has not reversed or retracted its decisions establishing or recognizing *Bivens* remedies in traditional contexts.

The District Court followed this binding precedent in concluding that *Bivens* provides a remedy for Mr. Rinaldi's Eighth Amendment failure-to-protect claims. JA21–25; JA240–44. That aspect of its decision should be affirmed. Given that this Court has expressly recognized a *Bivens* remedy for failure-to-protect claims of this sort, the context in which Mr. Rinaldi's claims arise is hardly "new." And, contrary to Defendants' arguments, *see* D.E. 22 at 23–40, the Supreme Court's recent decision in *Egbert* does not undermine the Court's recognition of a *Bivens* remedy in this context. Because the Court is not here called upon to "extend" *Bivens* to a new context, it need not consider Defendants' arguments that "special factors counsel hesitation" in

permitting an extension. But those factors, in any case, are unavailing. Thus, assuming the Court agrees that there are disputed issues of fact warranting trial, it should remand for further proceedings under *Bivens*.[14]

### A. Mr. Rinaldi does not call upon the Court to "extend" *Bivens* into a "new context."

While courts should exercise caution before *extending Bivens* into *new* contexts, the District Court did not do that in this case. Rather, the court followed Supreme Court and Circuit precedent that already recognized a *Bivens* remedy for claims like Mr. Rinaldi's. No recent Supreme Court decision has undermined or abrogated the existing recognition of a *Bivens* remedy for Eighth Amendment failure-to-protect claims.

#### 1. This Court has already held that *Bivens* extends to Eighth Amendment failure-to-protect claims involving inmate-on-inmate violence.

The District Court's holding "that *Bivens* extends to Rinaldi's Eighth Amendment failure to protect claim" was based on clearly established Third Circuit (and Supreme Court) precedent. JA25. Five years ago, in *Bistrian v. Levi*, this Court expressly found that a pretrial detainee had a "cognizable *Bivens* cause of action for the

---

[14]    As explained below, Mr. Rinaldi should be permitted to proceed on remand under the FTCA, in addition to *Bivens*.

alleged failure of the defendants to protect him from a substantial risk of serious injury at the hands of other inmates." 912 F.3d 79, 88 (3d Cir. 2018).

In *Bistrian*, the Court applied the "rigorous" two-step *Bivens* analysis set forth in *Ziglar*. That test requires a court to first determine whether a case presents a new *Bivens* context—that is, one that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 582 U.S. at 139. If the case does arise in a new context, the court must consider whether any "special factors counsel[] hesitation" in the extension of *Bivens* to the new context. *Id.* Though the *Bistrian* Court addressed the *Ziglar* factors, it ultimately concluded that "prisoner-on-prisoner violence is *not* a new context for *Bivens* claims," as it is substantially similar to the context addressed by the Supreme Court in *Farmer*. 912 F.3d at 88 (emphasis added); *see also id.* at 91 ("The Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment.").[15]

This Court reaffirmed *Bistrian*'s holding in *Shorter*, decided after the District Court's decision below. 12 F. 4th at 373. There, the Court again concluded that

---

[15]    Though *Farmer* did not expressly hold that it was recognizing a "*Bivens* claim," per se, it "discussed at length 'deliberate indifference'" as the applicable legal standard, which is the "legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed." *Bistrian*, 912 F.3d at 90–91.

*Farmer* "practically dictate[d]" its holding that a *Bivens* remedy is available for Eighth Amendment failure-to-protect claims. 12 F.4th at 373. And it confirmed that its prior holding in *Bistrian* that *Farmer* "remains good law," notwithstanding subsequent Supreme Court decisions that had emphasized the limited contexts in which that Court had recognized *Bivens* claims. *Id.* at 373 n.5.[16]

In sum, this Court has twice explicitly held that *Bivens* extends to the very context presented here—an Eighth Amendment failure-to-protect claim involving inmate-on-inmate violence. The District Court was therefore correct to recognize that *Bivens* provides a remedy for Mr. Rinaldi's claims. JA25. The District Court saw through Defendants' argument that Mr. Rinaldi's claims arose in the new "context of inmate housing decisions and institutional safety," JA24, and instead recognized that Mr. Rinaldi was raising an Eighth Amendment failure-to-protect claim based on the

---

[16]     In both *Shorter* and *Bistrian*, government defendants argued that recent Supreme Court decisions declining to extend *Bivens* to *new* contexts somehow erased (*sub silentio*) the Supreme Court's decision in *Farmer* applying *Bivens* in the Eighth Amendment failure-to-protect context. *See Bistrian*, 912 F.3d at 91; *Shorter*, 12 F.4th at 373 n.5. This Court rejected that argument each time, pointing out that, although *Ziglar* "identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*," that omission did not mean that *Farmer* is irrelevant to assessing the scope of *Bivens*'s application in the Eighth Amendment context. *Bistrian*, 912 F.3d at 91; *see also Shorter*, 12 F.4th at 373 n.5 (addressing *Hernandez v. Mesa*). After all, *Farmer* addressed the same general context as *Carlson*, which also recognized a cause of action for violation of the Eighth Amendment. *Bistrian*, 912 F.3d at 91; *Shorter*, 12 F.4th at 373 n.5.

"alleged failure of the defendants to protect him from a substantial risk of serious injury at the hands of other inmates." *Bistrian*, 912 F.3d at 88. This, of course, is the *same* context to which this Court applied *Bivens* in *Bistrian* (and subsequently *Shorter*) and the same context that the Supreme Court addressed in *Farmer*.

The District Court's analysis of *Bivens* was thus not only consistent with, but *dictated by* the binding precedent of this Court and the Supreme Court. Because this Court has already (twice) applied *Bivens* in this context, there is no need to revisit its *Ziglar* analysis again here.

**B. The Supreme Court's recent decision in *Egbert* does not undermine the longstanding recognition that *Bivens* extends to failure-to-protect claims.**

In urging this Court to reverse, Defendants take a page out of the same playbook used by the defendants in *Bistrian* and *Shorter*. They argue that a recent Supreme Court case—this time *Egbert v. Boule*, 596 U.S. 482 (2022)—somehow undermines the longstanding recognition of a *Bivens* remedy for Eighth Amendment failure-to-protect claims. D.E. 22 at 16. It does not. While *Egbert* cautioned lower courts not to extend *Bivens* to *new* contexts, it did nothing to *retract* the Court's longstanding and ongoing recognition of a *Bivens* remedy for Eighth Amendment failure-to-protect claims. *Egbert*, 596 U.S. at 502. It is thus no different than the cases this Court has already addressed and found not to undermine the recognition of a

*Bivens* remedy in this context. Indeed, because this case does not present a "new" *Bivens* context at all, the Court need not reconsider its earlier holdings.

Contrary to Defendants' suggestion, *Egbert* was *not* a "watershed decision." D.E. 22 at 16. The Supreme Court in *Egbert* simply restated the existing *Bivens* doctrine that it had developed over the past 50 years and applied it to the Ninth Circuit's recognition of two *new Bivens* contexts: First Amendment retaliation and Fourth Amendment excessive force as applied against Border Patrol officers. *Egbert*, 596 U.S. at 494–501. Indeed, the Court explicitly stated that it was reversing the Ninth Circuit's decision "[b]ecause [its *existing*] cases have made clear" that *Bivens* should only be *expanded* in "the most unusual circumstances." *Id.* at 486. The Court "recited its well-established two-part test for implying a *Bivens* remedy," *Haugen*, 68 F.4th at 833, and applied that test to the claims advanced by the plaintiff, which the Ninth Circuit had stretched *Bivens* to cover, *Egbert*, 596 U.S. at 494–501.

This Court conducted this same analysis in *Bistrian* and *Shorter*, determining (at the first step) that "prisoner-on-prisoner violence is not a new context for *Bivens* claims," and (at the second) that "no special factors counsel against allowing a failure-to-protect cause of action." *Bistrian*, 912 F.3d at 88. Nothing in *Egbert* upsets this Court's prior conclusion. After all, *Egbert* merely reinforced the Supreme Court's

earlier decision in *Ziglar*, which this Court examined and applied in *Bistrian* (and, later, *Shorter*).

Like *Ziglar* before it, *Egbert* cited the decisions in *Bivens*, *Davis*, and *Carlson* as the three instances in which the Supreme Court had "fashioned new causes of action under the Constitution," and stressed that, "[s]ince these cases, the Court has not implied additional causes of action under the Constitution." *Egbert*, 596 U.S. at 490–91. But this statement is no more significant than the statement in *Ziglar* that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131. Yet, this Court has expressly concluded that leaving *Farmer* off that list does not suggest that the Supreme Court does not regard Eighth Amendment failure-to-protect claims to fall within its existing *Bivens* precedent. *Bistrian*, 912 F.3d at 90; *Shorter*, 12 F.4th at 372–73.[17]

---

[17]     *Egbert* does contain language retracting any prior suggestion that *Bivens* extends to First Amendment retaliation claims. *See* 596 U.S. at 498 ("While we have assumed that such a damages action might be available, we have never held that *Bivens* extends to First Amendment claims." (internal quotation marks, citations, and alteration omitted); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). But neither *Egbert* nor any other Supreme Court case contains similar language suggesting that the Court has only assumed, and not held, that *Bivens* extends to Eighth Amendment failure-to-protect claims.

In short, while *Egbert* joins a list of several Supreme Court decisions that have cautioned courts not to *expand Bivens* to *new* contexts (including First Amendment retaliation claims), it does nothing to retract the Supreme Court's previous recognition of a *Bivens* cause of action in the Eighth Amendment failure-to-protect context. It therefore provides no impetus for this Court to revisit its own well-considered decisions finding that a *Bivens* remedy exists in this context.

**C. The Court need not reconsider the "special factors" Defendants identify.**

Because this Court has already recognized that *Bivens* extends to Eighth Amendment failure-to-protect claims, the Court need not address the "special factors" that Defendants' have assembled in their briefs. *See Bistrian*, 912 F.3d at 91–92 ("Since we conclude a failure-to-protect claim does not present a new context, there is no need to address the second step and consider special factors.").

Defendants' purported special factors are all the more irrelevant in this case, given that the Court has *already rejected* similar, if not identical arguments for refusing to recognize a *Bivens* claim in this context. *See Bistrian*, 912 F.3d at 92–94 (dismissing proposed special factors, including separation of powers, the availability of alternative processes, and the goals of the PLRA). None of the factors Defendants have identified establish that the judiciary is "less equipped than Congress to 'weigh the costs and

benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. 482 at 492 (quoting *Ziglar*, 582 U.S. 120 at 137).[18]

### III. In light of *Xi v. Haugen*, the FTCA provides an alternative basis recognizing Mr. Rinaldi's claims.

In his Complaint, Mr. Rinaldi advanced negligence claims against the United States, while also alleging that Defendants' conduct violated the Constitution. JA44. The District Court parsed these claims and dismissed the FTCA claim under the discretionary-function exception to the FTCA's waiver of sovereign immunity. JA310–11. This Court affirmed, rejecting Rinaldi's argument that the discretionary-function exception cannot apply when the alleged negligent acts are also unconstitutional. JA190. That holding has been abrogated by the Court's subsequent decision in *Haugen*, which held that, "[a]t the motion-to-dismiss stage, all a plaintiff must do to negate the discretionary function exception is plausibly allege a constitutional violation." 68 F.4th at 840. Thus, regardless of how the Court addresses the *Bivens* question, Mr. Rinaldi should at least be permitted to revive his FTCA claim on remand.

---

[18]    As discussed below, in light of this Court's recent decision in *Haugen*, Mr. Rinaldi should be permitted to pursue his claims under the FTCA. But this Court has already held that "the existence of an FTCA remedy does not foreclose an analogous remedy under *Bivens*." 912 F.3d at 92.

**A. Mr. Rinaldi stated a viable FTCA claim.**

Prisoners may sue under the FTCA for torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Courts have long recognized that the FTCA provides a basis for prisoners to bring failure-to-protect claims like those alleged here. *See, e.g.*, *Martinez v. United States*, 2015 WL 1471446, at *2–3 (M.D. Pa. Mar. 31, 2015).

To state a claim under the FTCA, the plaintiff must establish that an alleged wrongful act or omission violated the substantive tort law of the state in which the act or omission occurs. *See* 28 U.S.C. § 1346(b)(1). Thus, under Pennsylvania law, Mr. Rinaldi had to establish that: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage." *Martinez*, 2015 WL 1471446, at *2 (applying Pennsylvania law in prisoner's FTCA failure-to-protect case). He easily satisfied each of these elements.

*First*, it is well-established that prison officials owe a general duty of care to protect prisoners from harm. *See United States v. Muniz*, 374 U.S. 150, 164–65 (1963) (holding that FTCA imposes a "duty of care owed by the Bureau of Prisons to

49

federal prisoners" (citing 18 U.S.C. § 4042)). Though "[t]he Government is not an insurer of the safety of a prisoner," *Turner v. Miller*, 679 F. Supp. 441, 444 (M.D. Pa. 1987), prison officials must at minimum "exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him," *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987). This includes attacks from fellow inmates. *See McClendon v. Beasley*, 2020 WL 5709268, at *8 (M.D. Pa. Sept. 24, 2020) (describing duty of care in prisoner-on-prisoner assault FTCA suits).

*Second*, Mr. Rinaldi's well-pleaded allegations show that Appellees negligently breached that duty, and that he suffered physical harm as a result. "[I]n FTCA suits brought by inmates alleging assaults by other inmates, a breach of the duty of ordinary care usually requires a showing that correctional officials knew of a potential problem between the two inmates prior to the assault." *Id.* Where an officer does possess "knowledge of an immediate threat to [an inmate's] safety" and "nevertheless fails to take precautions accordingly," an inmate "may well have a viable FTCA claim." *Macias v. United States*, 2006 WL 1843111, at *3 (D.N.J. June 30, 2006) (citing *Davidson v. O'Lone*, 752 F.2d 817, 820 (3d Cir. 1984)).

The undisputed facts show that at least two defendants, Officers Raup and Beaver, had prior and specific knowledge of Pink's threat to harm Mr. Rinaldi. Officer Beaver was present when inmate Pink threatened that "I am not cuffing up and if you put anybody in here with me I will kill them and hurt the officer trying to do it." JA397. Both Officers Beaver and Raup found that the threat was sufficiently serious to charge Pink with a disciplinary violation for "threatening another with bodily harm." JA400–01. Yet neither officer took precautionary measures to reassign Mr. Rinaldi to a different cell. Nor did the Acting Warden, who was notified of the threat, direct the Unit Team in charge of cell assignments to reassign Mr. Rinaldi. JA496.

Courts have found prison officials negligent in similar circumstances where officials had far less notice of much less specific threats. In *Davidson*, a suit brought by a prisoner against state prison officials under § 1983, this Court found defendants negligent for ignoring a written note from an inmate that preceded an attack two days later. 752 F.2d at 819–21. In *Belcher v. United States*, the District Court for the Middle District of Pennsylvania found USP Lewisburg officials negligent for failing to place an inmate in protective custody until after he was attacked by another inmate. 2005 WL 2175709, at *5 (M.D. Pa. Sept. 6, 2005). The *Belcher* court allowed the

inmate's FTCA claim to proceed, even though his complaint lacked any allegations that prison officials had specific pre-attack knowledge of the threat. *Id.*

Here, not only did Officers Raup and Beaver (and the Acting Warden, who received the incident report) have specific pre-attack knowledge of the threat, they took *no* post-attack action to separate Mr. Rinaldi from the threat. The District Court absolved Officers Raup and Beaver because it found that they had no "information, intelligence, … or specified threat[s] indicating Altrazo Pink and Rinaldi were incompatible as cellmates." JA17. But a reasonable factfinder could conclude that the report of Pink's threat is *definitionally* information about a "specified threat." Defendants contend that "[i]t was not uncommon for inmates" to "make unverified threats about accepting cellmates to attempt to manipulate a single cell assignment." *Id.* at *5. But if that were the case, Defendants should not have charged Mr. Pink with threatening Mr. Rinaldi with bodily harm. Moreover, as Mr. Rinaldi testified at his deposition, Pink was known to engage in physical altercations with *every* cellmate he had prior to and after Mr. Rinaldi, making it especially risky to place Rinaldi in the cell. JA320–21.

In sum, Mr. Rinaldi easily stated a claim for relief under the FTCA. The District Court dismissed the claim (and this Court affirmed) only because it

concluded that the discretionary-function exception applied. As the Court's decision in *Haugen* shows, however, that was not a permissible ground for dismissing the claim.

**B. The decisions dismissing Mr. Rinaldi's FTCA claim under the discretionary-function exception have been abrogated by this Court's decision in *Haugen*.**

The FTCA's discretionary-function exception effectively revokes the Government's waiver of sovereign immunity for (and thereby bars) "[a]ny claim" based on a federal employee's "failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). While the District Court dismissed the FTCA claim on this basis, Mr. Rinaldi argued on appeal that "the discretionary function exception cannot apply" because his "allegations relate[d] to unconstitutional acts." *Rinaldi*, 904 F.3d at 272 n.15. In other words: A federal officer lacks discretion to commit unconstitutional acts.

This Court rejected Mr. Rinaldi's constitutional argument in his initial appeal, finding that Mr. Rinaldi "fail[ed] to recognize … [that] [t]he FTCA only waives sovereign immunity for torts recognized under the law of the state in which the conduct was alleged to have occurred," not constitutional claims. *Id.* In effect, the Court parsed Mr. Rinaldi's FTCA negligence claim from his related constitutional

claims and held that the discretionary-function exception properly applied to the FTCA claim.

In so doing, the Court followed the minority rule in a longstanding circuit split on the scope of the discretionary-function exception. Under this approach, followed by the Seventh and Eleventh Circuits, the government is immune from FTCA suits even for flagrant constitutional violations because the FTCA only extends to "common-law torts, without regard to constitutional theories." *Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019); *see Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021) ("Congress left no room [in the FTCA's text] for [an] extra-textual 'constitutional-claims exclusion.'").

However, this Court recently switched sides in the circuit split, thereby abrogating this Court's prior decision and other decisions that had applied the discretionary-function exception even in the face of alleged constitutional violations. *See Haugen*, 68 F.4th at 839. In *Haugen*, a case (like this one) involving mixed-*Bivens* and FTCA claims, the Court adopted a new rule recognizing that unconstitutional conduct is "per se outside the discretionary function exception." *Id.*; *see also id.* at 829 (FTCA claims "premised on conduct that is plausibly alleged to violate the

Constitution may not be dismissed on the basis of the discretionary function exception").

By doing so, this Court joined the majority—now totaling seven circuits—recognizing that, "because the Government has no discretion to violate the Constitution," the discretionary-function exception cannot bar FTCA claims alleging constitutional violations. *Id.* at 829.

## C. Mr. Rinaldi's FTCA claims should be revived on remand.

*Haugen* breathes new life into Mr. Rinaldi's FTCA claims. Though Mr. Rinaldi would ordinarily be precluded from re-litigating these claims under the law-of-the-case doctrine, this Court has recognized an exception where the decision is a "substantial change in the legal climate." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1233 n.9 (3d Cir. 1995); *Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir. 1993) ("An intervening change in controlling law is an exception to the law of the case doctrine."). This is true even when there is an "independent change of law by the same court." *See* Wright & Miller, 18B Fed. Prac. and Proc. § 4478 (3d ed. 1998) (citing cases).

The Court's decision in *Haugen* surely constitutes a substantial change in the legal climate surrounding FTCA claims. Prior to *Haugen*, this Court had never

permitted an FTCA suit to proceed against the government under the "unconstitutional acts" rule. The two cases cited by the *Haugen* court as precedent for the rule referenced the "unconstitutional acts" rule as dicta, and in any case, both sided with the government. *See U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 119–20 (3d Cir. 1988) (rejecting the plaintiff's claim as barred under the discretionary function exception).

In sum, the FTCA provides an additional basis for jurisdiction for Mr. Rinaldi's failure-to-protect claims. The Court should therefore remand with instructions that the District Court consider Mr. Rinaldi's claims under both the FTCA and *Bivens.*

## CONCLUSION

Though the District Court properly held that *Bivens* applies to Mr. Rinaldi's Eighth Amendment claims, it erred in reviewing those claims on the merits, overlooking genuine factual disputes and penalizing Mr. Rinaldi—a pro se prisoner—for imperfections in his uncounseled filings. The District Court's judgment should therefore be reversed and the case remanded for further proceedings, including discovery.

Dated: February 1, 2024                    Respectfully submitted,

                                    By:    /s/ *Tadhg Dooley*
                                           Tadhg Dooley
                                           David R. Roth
                                           WIGGIN AND DANA LLP
                                           One Century Tower
                                           265 Church Street
                                           New Haven, CT 06510
                                           (203) 498-4400
                                           tdooley@wiggin.com
                                           droth@wiggin.com


                                           *Counsel for Appellant*

## CERTIFICATION OF BAR MEMBERSHIP

Tadhg Dooley certifies as follows:

1.  I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. David Roth is also a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.  Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: February 1, 2024

/s/ *Tadhg Dooley*
Tadhg Dooley

58

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Third Circuit LAR 31.1(c), the undersigned counsel certifies that this electronic brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 12,884 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f);

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it was prepared using Microsoft Office 365 and is set in 14-point sized Adobe Garamond Pro font;

(iii) is identical to the seven hard copies to be sent to the Clerk of the Court via FedEx to ensure delivery is no later than 5 days after the electronic filing date; and

(iv) has been scanned with a virus detection program and no virus was detected.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: February 1, 2024

/s/ *Tadhg Dooley*
Tadhg Dooley

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2024, I have caused a copy of the foregoing brief and joint appendix to be served on counsel of record through the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Additionally, seven copies of the foregoing brief with attached appendix volume 1 and four copies of separately filed appendix volume 2 will be sent out this week by Federal Express to ensure delivery is no later than 5 days after the electronic filing date:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, Pennsylvania 19106-1790

Dated: February 1, 2024

/s/ *Tadhg Dooley*
Tadhg Dooley